UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| JOHNNY METSCHER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| THE GUARDIAN LIFE INSURANCE | ) |
| COMPANY OF AMERICA, | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

COMES NOW Plaintiff, Johnny Metscher, and for his claims and causes of action against Defendant, Guardian Life Insurance Company of America, states as follows:

### PARTIES

1. Johnny Metscher ("Metscher") is a resident and citizen of the State of Missouri.

2. Defendant Guardian Life Insurance Company of America ("Guardian") is an out of state insurance company authorized to do business in the State of Missouri. The Commissioner of the Missouri Department of Insurance is authorized to accept service of process on behalf of Guardian in this action.

### JURISDICTION AND VENUE

3. Metscher brings his claims pursuant to the Employee Retirement Income Security Act ("ERISA") and 29 U.S.C. § 1001 *et seq*.

4. This dispute is governed by a welfare benefits plan and its policy documents, as well as applicable federal law regarding employer provided benefits. 29 U.S.C. § 1132(e)(1).

5. This Court also has subject matter jurisdiction pursuant to the general jurisdictional statute for civil actions arising under federal law. 28 U.S.C. § 1331.

6. Venue lies in this district under 29 U.S.C. § 1132(e)(2), as the breach occurred in this district, and because the welfare benefits plan is administered in this district.

7. Venue is also proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and/or omissions giving rise to this action occurred within this judicial district.

## INFORMATION REGARDING TRIAL

8. No jury trial is allowed under ERISA law.

## STATEMENTS OF FACT

9. Metscher was employed by MIQ Logistics ("MIQ") as a "Truckload Fulfillment Partner."

10. MIQ sponsored a group welfare benefits plan ("the Plan") for its participating employees, including long-term disability ("LTD") benefits and life inurance benefits.

11. The Plan is employee welfare benefits plan as defined by 29 U.S.C. § 1002(1).

12. The Plan offered long-term disability ("LTD") benefits and life insurance benefits to qualifying St. Luke's employees, including Metscher.

13. At all relevant times, Metscher was a participant and a covered person under the Plan.

14. MIQ is the administrator of the Plan.

15. MIQ delegated or attempted to delegate the function of issuing certain claim determinations under the Plan to Guardian.

16. MIQ and Guardian entered into an administrative services contract through which MIQ paid Guardian for acting as a claim's administrator.

17. Metscher's LTD policy ("LTD Policy") provides that employees would be entitled to receive LTD benefits if they became "Disabled."

18. The LTD Policy defines "Disabled" as:

> **Disability or Disabled** These terms mean that a current *sickness* or *injury* causes physical or mental impairment to such a degree that you are:
>
> (1) During the *elimination period* and the *own occupation* period, not able to perform, on a full-time basis, the major duties of your *own occupation*.
>
> (2) After the end of the *own occupation* period, not able to perform, on a full-time basis, the major duties of any *gainful work*.

19. Metscher's life insurance policy ("Life Policy") allows for the waiver of premiums for life insurance benefits coverage ("LWOP") in the event that a Plan participant becomes "Permanently and Totally Disabled."

20. Under the Life Policy, an employee is "Permanently and Totally Disabled" when he is unable to perform any work for wages or profit and is receiving regular doctor's care for his disabling condition.

21. During his employment and while covered under the Plan, Metscher began suffering from episodes of pulmonary disfunction that became increasingly more severe.

22. From 2011 to 2018, Metscher underwent significant testing, imaging, medication, breathing treatments, and surgeries to treat his pulmonary issues.

23. During his employment and while covered under the Plan, Metscher also began suffering from bilateral deafness, which has rendered him completely deaf in one ear and about 60% deaf in the other.

24. During this time, Metscher submitted two disability claims, one in 2013 and a second in 2015, from which he managed to return to work full time on both occasions.

25. Though Metscher was always determined to keep working, his symptoms would continue to substantially interfere with his ability to perform the material and substantial duties of his job.

26. Eventually, Metscher's conditions got so bad that he became unable to continue working without unreasonable accommodations and his employment was terminated by MIQ in

October 2017.

27. Because he was no longer able to work, Metscher applied for LTD benefits in January 2023, the time at which he became aware of his LTD coverage under the Plan.

28. Metscher provided Guardian with all the information necessary to establish proof of his disabled status, including the names and addresses of all treating providers, medical records and proof of regular medical care, and proof of his receipt of Social Security Disability benefits, among other items.

29. On May 15, 2023, Guardian informed Metscher that it had denied his claim because it had not received adequate proof of his disabled status.

30. On June 29, 2023, Guardian advised Metscher that it had reviewed his eligibility for LWOP benefits. Guardian stated that it did not have the information necessary to evaluate his claim and therefore his LWOP benefits would be denied.

31. On November 1, 2023, Metscher appealed Guardian's determination and provided Guardian with additional, adequate proof of his disabled status.

32. On January 4, 2024, Guardian informed Metscher that it had once again denied Metscher's claim for LTD benefits. Guardian stated that Metscher's medical records did not support restrictions or limitations going back to his last day of work in 2017 through the time Guardian made its determination in January 2024.

33. Guardian stated that its decision was based on the review of registered nurse, however Guardian never provided that report to Metscher in any of its communications prior to making its decision or following its decision.

34. On January 5, 2024, Guardian informed Metscher that it had once again determined he is ineligible for LWOP benefits.

35. On July 1, 2024, Metscher again appealed Guardian's decision to deny him both LTD benefits and LWOP benefits. Metscher provided Guardian with further proof that his conditions presented restrictions and limitations that resulted in an inability to work not only as a Truckload Fulfillment Partner, but to work in any occupation.

36. On September 11, 2024, Guardian again denied Metscher's LTD claim.

37. At all relevant times, Metscher was and remains "Disabled" under the Plan.

38. Metscher has exhausted all administrative remedies.

## CAUSES OF ACTION

### COUNT I
### 29 U.S.C. § 1132(a)(1)(B) – WRONGFUL DENIAL OF BENEFITS

39. Metscher realleges the preceding paragraphs as if fully set forth herein.

40. Metscher is entitled to all unpaid and accrued LTD benefits, as Guardian;

    a. Made an unfavorable decision without substantial evidence;

    b. Failed to properly consider Metscher's medical impairments and resulting limitations; and

    c. Issued an unfavorable decision that was arbitrary and capricious.

41. Pursuant to 29 U.S.C. § 1132(a)(1)(b), Metscher is entitled to an award of actual damages for losses suffered.

42. Pursuant to 29 U.S.C. § 1132(g), judgment may include compensation for a beneficiary's attorney's fees, costs, and prejudgment interest.

43. Guardian has not satisfied its obligation to pay Metscher's LTD benefits.

44. WHEREFORE, pursuant to 29 U.S.C. § 1132(a)(1)(B) and 29 U.S.C. § 1132(g), Metscher prays for judgment against Guardian for unpaid LTD benefits, attorney's fees, costs, and prejudgment interest.

## COUNT II
## 29 U.S.C. § 1132(a)(1)(B) – WRONGFUL DENIAL OF BENEFITS

45. Metscher realleges the preceding paragraphs as if fully set forth herein.

46. Metscher is entitled to LWOP benefits, as Guardian;

    d. Made an unfavorable decision without substantial evidence;

    e. Failed to properly consider Metscher's medical impairments and resulting limitations; and

    f. Issued an unfavorable decision that was arbitrary and capricious.

47. Pursuant to 29 U.S.C. § 1132(a)(1)(b), Metscher is entitled to an award of actual damages for losses suffered.

48. Pursuant to 29 U.S.C. § 1132(g), judgment may include compensation for a beneficiary's attorney's fees, costs, and prejudgment interest.

49. Guardian has not satisfied its obligation to pay Metscher's LWOP benefits.

50. WHEREFORE, pursuant to 29 U.S.C. § 1132(a)(1)(B) and 29 U.S.C. § 1132(g), Metscher prays for judgment against Guardian for unpaid LWOP benefits, attorney's fees, costs, and prejudgment interest.

## COUNT III
## 29 U.S.C. § 1132(a)(3) – BREACH OF FIDUCIARY DUTY

51. Metscher realleges the preceding paragraphs as if fully set forth herein.

52. Under 29 U.S.C. § 1002(21)(A), a fiduciary is one who:

    > "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan."

53. 29 U.S.C. § 1104(a)(1)(A) describes the fiduciary Guardian of care:

> "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan."

54. As the Plan's designated claims administrator and entity exercising discretion in claims administration, Guardian is a fiduciary.

55. Metscher participated in the Plan as previously indicated.

56. As the payor of benefits and the entity responsible for benefits determinations, Guardian operates under an inherent structural conflict of interest.

57. A higher than marketplace quality Guardian, as set forth in *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 128 (2008) governs Guardian's actions as a fiduciary.

58. Guardian breached its fiduciary duty in:

    a. Referring Metscher's claims for review to persons who were not able to exercise independent thought or judgment, or deviate from Guardian's previously expressed position;

    b. Engaging in a direct structural conflict of interest by assuming the role of both claim administrator and potential payor of benefits;

    c. Engaging in a direct structural conflict of interest by referring Metscher claims to a person who is directly answerable to Guardian and whose employment and compensation is determined by Guardian; and

    d. Failing to perform a meaningful review of Metscher's claims on appeal.

59. Guardian denied Metscher's LTD and LWOP benefits for the purpose of elevating its financial interests. In doing so, it breached its fiduciary duties.

60. Guardian failed to discharge its duties solely in the interests of its participants and

beneficiaries. It acted with a conflict of interest and breached its fiduciary duty to both Metscher and the Plan's participants and beneficiaries generally.

61. Guardian's improper conduct demonstrates that ordinary relief under § 1132(a)(1)(B) is not an adequate remedy.

62. Guardian's violations of regulations alone allow Metscher the right to pursue any remedy under Section 502(a) of ERISA, including § 1132(a)(3). 29 C.F.R. § 2560.503-1(l)(2)(i).

63. Guardian's violations of federal regulation also subject its decision to de novo review.

64. WHEREFORE, pursuant to 29 U.S.C. § 1132(a)(3), § 1109, and § 1132(a)(2), Metscher prays for an order that Guardian retrain its employees consistent with ERISA fiduciary obligations and federal regulations; for reformation of its services agreement with the plan administrator consistent with ERISA fiduciary obligations and federal regulations; for an injunction preventing further unlawful acts by Guardian in its fiduciary capacity; for an equitable accounting of benefits that Guardian has withheld; for the disgorgement of profits enjoyed by Guardian in withholding benefits; for restitution under a theory of surcharge; for the Court's imposition of a constructive trust; for an award of attorney fees; and for further relief as the Court deems just.

Respectfully submitted,

**BURNETTDRISKILL, Attorneys**

By: /s/ Benjamin Narrell
Benjamin Narrell, MO#79228
Derrick Pearce, MO#42793
103 W 26th Ave., Ste. 290
North Missouri City, MO
64116

P: 816.781.4836  
F: 816.792.3634  
bnarrell@burnettdriskill.com  
dpearce@burnettdriskill.com  
ATTORNEYS FOR PLAINTIFF